UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
VINCENT DeMARTINO,

                              Plaintiff,

        – against –

MICHAEL ZENK, DR. BORECKY;
DR. FRANCIS; DR. BEAUDIN;
MR. SCHIAVONE; MS. MIDDLETON;
MS. SULLIVAN; P.A. ERZOUKI;
P.A.CELESTIN; P.A. HUNT; and
M.D.C. MEDICAL DEPARTMENT,

                              Defendants.
-----------------------------------------------------X
**TOWNES, United States District Judge:**

**MEMORANDUM and ORDER**

04 CV 3880 (SLT)(LB)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★      MAY 2 5 2006      ★
P.M.
TIME A.M. ―――――

Defendants' motion to dismiss is denied in part and granted in part. Defendants' motion for summary judgment is denied, with leave to re-file at the close of discovery. This memorandum briefly address Defendants' claims.


I.      *Statement of Facts*

        The following facts are drawn from the complaint filed in this action (the "Complaint") and construed in the light most favorable to the plaintiff, Vincent DeMartino ("DeMartino" or "Plaintiff"). *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Because the Complaint incorporates by reference a series of grievances to the Bureau of Prisons ("BOP") filed by Plaintiff (and BOP's responses thereto), the facts contained therein were also considered. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels and Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("Our review is generally limited to...the complaint and...any documents

that are either incorporated into the complaint by reference or attached to the complaint as exhibits.") (citations omitted).

On or about February 23, 2003, Plaintiff was placed in the custody of the Metropolitan Detention Center ("MDC") in Brooklyn, NY. (Complaint ¶ 6.) Plaintiff alleges that, upon intake, he informed the Physician's Assistant (the "PA") on duty that, prior to his incarceration, he was told by a Dr. Jeffrey Shakin that if he did not have surgery to remove a macular pucker from his right eye, he would suffer irreversible structural damage. (*Id.* ¶¶ 7-8.) Plaintiff also informed the PA that another outside doctor ordered a right knee replacement for Plaintiff following an automobile accident. (*Id.* at ¶ 9.) Plaintiff was given a clean bill of health and placed into MDC's general population. (Complaint ¶ 10.)

On or about May 17, 2003, Plaintiff was diagnosed with nasal polyps by MDC doctors after several episodes during which he could not breathe and was taken to MDC's medical department on an emergency basis. (*Id.* at ¶¶ 11-12.) On or about January 21, 2004, Plaintiff was taken to "Lutheran Hospital" where a physician ordered the removal of his polyps. (*Id.* at ¶ 14.) Two days later, Plaintiff was taken to Beekman Hospital where he was diagnosed with erosive esophagitis and had a specimen extracted from his stomach for a biopsy. (*Id.* at ¶ 15.) He alleges that he was provided neither with the prescription that was written for him on that day, nor with the results of this test, and that, according to unspecified members of the MDC staff, the results were lost. (*Id.* at ¶¶ 15-16.) Plaintiff wrote several letters to the Honorable Raymond J. Dearie (the Judge assigned to Plaintiff's then-ongoing criminal case, *see United States v. DeMartino*, 03-CR-285) complaining of Defendants' failure to provide him with adequate medical care.

2

Throughout this time, Plaintiff also filed requests for administrative remedies with BOP, alleging that, since his incarceration, he developed a "chronic breathing disorder" that was affecting his speech. (*See, e.g.*, Pl. Mem. of Law Ex. C at 2 ("Inmate request for Informal Resolution").) Plaintiff continued to file grievances, repeating that his condition was not improving, despite the "many different kinds of medication" Defendants prescribed to him. (Pl. Mem. of Law Ex. C at 3 ("Request for Administrative Remedy" dated 10/1/2003).) Plaintiff filed BOP's "Requests for Administrative Remedies" on October 1, 2003, November 14, 2003, and December 3, 2003. (*See id.* at 3-5.) In each, he repeated that the prescribed medication was not ameliorating his breathing problems. (*Id.*) In his November 14, 2003 submission, he referenced the "very serious and irreversible eye condition" from which he allegedly suffers. (*Id.*)

However, on November 24, 2003 and December 5, 2003, two of Plaintiff's requests were rejected by BOP. (Pl. Mem. of Law Ex. C at 10-11.) On November 24, 2003, Plaintiff was informed, *inter alia*, that he failed to file the appropriate prerequisite form along with his grievance. (*Id.* at 11.) On December 5, 2003, Plaintiff was informed that he failed to submit his request to the appropriate recipient; that he failed to attach the necessary prerequisite forms; and that his request was untimely. (*Id.* at 10.) Nevertheless, "due to the seriousness of [his] allegations," a copy of his request was forwarded to BOP's medical department. (*Id.*)

On February 26, 2004, Plaintiff received a response from BOP, signed by Defendant Zenk, detailing Plaintiff's medical history at MDC. (Pl. Mem. of Law Ex. C at 8 ("Response to Request for Administrative Remedy").) It read, in relevant part:

3

> [O]n September 5, 2003, you were examined by a staff physician,
> who prescribed an Albuterol inhaler, Normal Saline nasal spray,
> and Humibid. A complete blood count, urinalysis and chemistry
> were also ordered. On September 19, 2003, you were examined by
> a staff physician who diagnosed you with Bronchitis and post-nasal
> drip. He prescribed Atrovent, Albuterol, and Nasorel to treat your
> contition. You were also referred you [*sic*] to a pulmonologist. On
> September 27, 2003, you were sent to the Downtown Hospital
> Emergency Room where you were diagnosed with Acid Reflux and
> Esophagitis. You were seen by a pulmonologist on October 2,
> 2003, who diagnosed you with acute Bacterial Bronchitis. He
> prescribed additional antibiotics and antihistimines. On
> October 24, 2003, you were examined by a staff physician who
> prescribed Prednisone, Humibid, and Actifed. On December 3,
> 2003, you were seen by a staff physician for Bronchitis and chronic
> obstructive pulmonary disease (COPD), per chest x-ray. On
> December 17, 2003, you were seen by an ENT specialist who
> diagnosed you with nasal polyps and recommended that a CAT
> scan of the sinus and a scope of your esophagus be done. The
> scope was performed on January 23, 2004. The CAT scan has
> been ordered . . . . The relief you seek has been granted.

(*Id.*)

Plaintiff appealed this decision on March 3, 2004, complaining that "I still have the problem and it is getting worst [*sic*]. Therefore, the relief I am seeking has not been granted at all." (Pl. Mem. of Law Ex. C. at 6.) On April 20, 2004, BOP's regional director responded to Plaintiff, stating, *inter alia*, that "[a] review of your appeal reveals that the Warden correctly summarized the medical care that you are receiving at MDC Brooklyn. You have been evaluated and treated repeatedly by medical staff. Additionally, you have received a CT scan."

On August 1, 2004, Plaintiff appealed the April 20, 2004 decision to the BOP Central Office. In his application, Plaintiff claims that he has had neither his polyps nor his macular pucker removed; that he is suffering from erosive esophagitis; and that all treatment given had thus far proven ineffective. (Pl. Mem. of Law Ex. C at 7 ("Central Office Administrative

Remedy Appeal").) He also claimed that the required surgeries were ordered by specialists. (*Id.*) Plaintiff's submission was rejected by BOP on account of Plaintiff's failure to submit the required number of photocopies, as well as the required prerequisite forms, including a copy of his appeal. (Pl. Mem. of Law Ex. C at 14.) Plaintiff claims that his grievance letters were lost through no fault of his own, and that he was denied access to a photocopier. (Complaint ¶ 2; Pl. Mem. of Law Ex. C at 1.)

On September 9, 2004, Plaintiff filed the instant Complaint, alleging that Defendants' refusal to grant him various surgeries constitutes cruel and unusual punishment under the Eighth Amendment to the Constitution. He seeks an order directing Defendants to order surgery as well as "compensatory and punitive damages" in amounts "to be determined by a jury with the courts [*sic*] permission." (Complaint ¶¶ 47-49.) It is undisputed that Plaintiff failed to exhaust his administrative remedies.

Plaintiff's Complaint names 11 defendants: Michael Zenk ("Zenk" or "Defendant Zenk"), the Warden of MDC; Drs. Michael Borecky ("Borecky" or "Defendant Borecky"), Francis[1] ("Francis" or "Defendant Francis") and Beaudin ("Beaudin" or "Defendant Beaudin"); PAs Erzouki ("Erzouki" or "Defendant Erzouki") and Celestin ("Celestin" or "Defendant Celestin"); Senior Staff Nurse Hunt ("Hunt" or "Defendant Hunt"); Schiavone ("Schiavone" or "Defendant Schiavone"), Plaintiff's unit manager; Stephanie Middleton ("Middleton" or "Defendant Middleton"), a Health Services Administrator at MDC; and Barbara Sullivan ("Sullivan" or "Defendant Sullivan"), an Assistant Health Services Adminsitrator at MDC.

---

[1]Certain Defendants' names are spelled differently in the Complaint, Defendants' moving papers and Plaintiff's opposition papers. This memorandum adopts the spelling provided by Plaintiff in his Complaint.

Plaintiff also names MDC's Medical Department as a defendant. The specific allegations against each Defendant follow.

*Celestin and Beaudin*

On January 29, 2004, Plaintiff was seen by Celestin and Dr. Beaudin, who told him that they did not know Plaintiff had been to the hospital, that Plaintiff's files were in another doctor's office, and that they could not take action without his file. (Complaint ¶ 19.) Plaintiff also alleges that, on several occasions, Defendant Celestin said that he did not know what was wrong with Plaintiff and also did not know what to do with him. (Complaint ¶ 35.)

*Schiavone*

On February 2, 2004, Plaintiff complained to Schiavone, the manager of his unit, who told Plaintiff that "the situation was out of [Schiavone's] hands," that the legal department and warden could "take as long as they want to do something," and that Schiavone could do nothing to help him. (Complaint ¶ 21.) Schiavone also allegedly told Plaintiff that MDC was understaffed. (*Id.*)

*Zenk*

Plaintiff alleges that when he complained to Warden Zenk about his health, Zenk replied, "I had all the same problems when I was a child and I outgrew them." (Complaint ¶ 26.) Plaintiff also complains that, for 18 months, Zenk promised to get back to him with a solution to Plaintiff's medical problems, but instead, "shut [Plaintiff] out." (*Id.* at ¶ 27.) Finally, he alleges

6

that Zenk's February 26, 2004, response to this grievance was merely a "repetition of his diagnosis" and "comments on how they are treating [him] with trial and error drugs." (*Id.* at ¶ 23.)

*Borecky*

Plaintiff alleges that Dr. Borecky also treated him with "trial and error" drugs. *Id.* at ¶ 31. He further claims that Borecky constantly assured him that surgery was imminent, when it was not, and that Borecky treated him with a drug containing penicillin, causing Plaintiff to suffer an allergic reaction. (Complaint ¶ 32.)

*Francis*

Plaintiff's primary care physician, Defendant Francis, is alleged to have told Plaintiff, "Don't go crazy with yourself writing all these letters to the court. We will just call the Judge and tell him that the problems are being addressed and that all is being taken care of." (Complaint ¶¶ 28-29.)

*Sullivan*

Defendant Sullivan is alleged to have laughed when Plaintiff informed her that his medical file had been lost. (Complaint ¶ 33.)

*Erzouki*

Defendant Erzouki believed Plaintifff had only a head cold, and advised Plaintiff to purchase aspirin and cold pills from the commissary. (Complaint ¶ 34.)

*Hunt*

Plaintiff alleges that when he approached Defendant Hunt to discuss his treatment, Hunt told Plaintiff, "I don't even remember my sister, how could you expect me to remember who you are?" (Complaint ¶ 41.)

*MDC's Medical Department*

Plaintiff claims that the Medical Department at MDC lost his file and repeatedly scheduled him for surgeries that were routinely postponed or cancelled. (Complaint ¶¶ 24, 36, 38.)

*Middleton*

Outside of the caption, the Complaint makes no mention of Defendant Middleton.

II. *Discussion*

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"), or, in the alternative, for summary judgment pursuant to Rule 56. Given that Plaintiff appeared *pro se* until very recently, and that the record reveals that the parties have not engaged in discovery, this Court declines to treat the instant

motion as one for summary judgment. *See Llanes v. EMSA Limited P'Ship*, 996 F. Supp. 314, 316 (S.D.N.Y. 1998) (declining to consider motion as one for summary judgment due to limited discovery); *Sereika v. Patel*, 411 F. Supp. 2d 397, 405 (S.D.N.Y. 2006) (summary judgment premature where *pro se* plaintiff did not have an adequate opportunity to conduct discovery). Accordingly, the Court is limited to consideration of only "the factual allegations in plaintiff's [pleading] . . . documents attached to the complaint as an exhibit or incorporated in it by reference" and "matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

Defendants move to dismiss the Complaint on six grounds: (1) sovereign immunity; (2) Plaintiff's failure to exhaust his administrative remedies; (3) Plaintiff's failure to allege the personal involvement of Defendant's Zenk and Middleton; (4) absolute immunity of Defendant Hunt; (5) Plaintiff's failure to allege that Defendants exhibited a deliberate indifference to his medical needs; and (6) qualified immunity.


A.    *Sovereign Immunity*

"Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent.  Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *Holloway v. United States*, 2006 WL 516826, at *2 (E.D.N.Y. Feb. 28, 2006) (Ross, *J.*) (lack of subject matter jurisdiction over

claims against United States, its agencies, or its employees in their official capacities). As a result, Plaintiff's claims against each of the Defendants in their official capacities, as well as his claim against MDC's Medical Department, an agency of the United States, are hereby dismissed. *Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983) ("*Bivens* authorizes suits against the responsible federal official . . . not against the government itself . . . and *Bivens*-type actions against the United States are . . . routinely dismissed for lack of subject matter jurisdiction.").

### B. *Failure to Exhaust Administrative Remedies*

"The failure to exhaust available administrative remedies is an affirmative defense." *Johnson v. Testman*, 380 F.3d 691, 695 (2d. Cir. 2004). Defendants argue that Plaintiff's failure to exhaust the BOP's three-tier grievance procedure mandates this Court's dismissal of his claims.

Section 1997e(a) of the Prisoner Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "The requirement applies to all prison suits, whether they concern ongoing prison conditions or individual episodes that have already occurred, and applies equally to *Bivens* claims." *Williams v. Met. Det. Ctr.*, 418 F. Supp. 2d 96, 100 (E.D.N.Y. 2005) (Trager, *J.*).

10

In the instant action, Plaintiff alleges that he "submitted all grievances according to institution policy." (Complaint at 2.) He further alleges that the prison misplaced some of his documents and lost others, resulting in "no real solution" to his problems. (*Id.*) It is apparent that some of Plaintiff's requests for internal administrative remedies were rejected on account of Plaintiff's failure to submit his requests to the appropriate person; others, for failure to file in a timely manner; or on account of Plaintiff's failure to enclose the required number of photocopies of his grievance forms. (*See* Ex. C to Pl. Mem. of Law.) Additionally, on August 29, 2004, Plaintiff included in one of his submissions to BOP a letter alleging that he was denied access to a copy machine.

Giving Plaintiff's *pro se* Complaint "the strongest arguments that [it] suggest[s]," *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citations omitted), this Court declines to hold, at this stage, that Plaintiff failed to exhaust his administrative remedies, as it may be later shown that Defendants prevented Plaintiff from submitting timely grievance forms by misplacing or losing his documents, or denying him access to a photocopier. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint under [Rule 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (citation omitted); *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (holding that affirmative defense of exhaustion subject to estoppel where prison officials prevented plaintiff from exhausting internal remedies by, *inter alia*, beating him, denying him grievance forms, and threatening him); *Sereika v. Patel*, 411 F. Supp. 2d at 403 ("A defendant in a claim brought under the PLRA may be estopped from raising an affirmative defense of non-exhaustion

on account of the prison official's own actions inhibiting the plaintiff from filing a grievance.")
(citation omitted).

C.    *Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a
complaint where the plaintiff has failed to state a claim upon which relief can be granted. When
evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual
allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff,
whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11
F.3d 21, 22 (2d Cir. 1993). The court may grant a Rule 12(b)(6) motion only where "'it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which would
entitle him to relief.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)
(*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

1.    *Claims Against Remaining Defendants in Their Individual Capacities*

When a federal prisoner brings a claim under *Bivens* alleging lack of adequate medical
care constituting cruel and unusual punishment under the Eighth Amendment, the claim is
evaluated under the standards for "deliberate indifference" set forth in *Estelle v. Gamble*, 429
U.S. 97, 106 (1976), and its progeny. *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 105 (2d Cir.
2000) (construing plaintiff's 42 U.S.C. § 1983 claim of deliberate indifference as one arising
under *Bivens* on account of plaintiff's status as a federal inmate); *Williams*, 418 F. Supp. 2d at
100 (construing plaintiffs § 1983 claim as one brought under *Bivens*).

12

Under this standard, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to establish a constitutional violation for inadequate medical care. *Estelle*, 429 U.S. at 106. "Deliberate indifference" exists when a defendant "knows of and disregards an excessive risk to inmate health or safety"; when the defendant is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw[s] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In light of this standard, a federal inmate's complaint regarding the conditions of his confinement must meet both an objective and a subjective standard, which this Court will now address in turn.

      a.    *Objective Prong*

To meet the objective standard, the deprivation must be sufficiently serious to deny the plaintiff "a minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). Crucial considerations in determining whether a deprivation is "sufficiently serious" include "the duration of the condition and the potential for serious physical harm." *Whitted v. Lazerson*, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998). "[T]he alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108-109 (2d Cir. 1998) (*citing Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("Factors . . . include . . . the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.").

13

Plaintiff alleges in the Complaint that, without surgery, the macular pucker in his right eye would lead to "irreversible structural damage."[2] (Complaint ¶ 8.) He also alleges that on three or four occasions, he could not breathe and was taken to the emergency room in connection with his nasal polyps, which he claims affected his speech. These allegations are sufficient to allege a serious medical condition for Eighth Amendment deliberate indifference purposes. *See Hemmings*, 134 F.3d at 109 (plaintiff alleged "facts that could potentially show that his condition was sufficiently painful to satisfy the objective prong of the deliberate indifference test under the Eighth Amendment."); *Carter v. Fagin*, 363 F. Supp. 2d 661, 663 (S.D.N.Y. 2005) (plaintiff satisfied objective prong "by alleging that he is suffering great pain and is being denied treatment that has been recommended and has proven effective in alleviating that pain"); *Kemp v. Wright*, 2005 WL 893571, at *4 (E.D.N.Y. Apr. 19, 2005) (Gleeson, *J.*) ("[C]ourts do not 'require an inmate to demonstrate that he . . . experiences pain that is at the limit of the human ability to bear' . . . . However, the pain must be more than annoyance.").

b.  *Subjective Prong*

With regard to the subjective prong, Plaintiff's claims against all but two of the remaining Defendants must be dismissed, on account of his failure to properly allege that they each possessed the culpable state of mind required to maintain deliberate indifference claims against them. As stated earlier, Plaintiff must allege that the official knew of and disregarded an

---

[2] Though the Court finds that Plaintiff's allegations nevertheless fulfill this prong, we also note that the allegation that Plaintiff requires eye surgery is unfounded. A review of the letter describing Plaintiff's macular pucker (which Plaintiff incorporated by reference into the Complaint) reveals only that Plaintiff "needs to be seen by an ophthalmologist at least once a month," and that he "will *probably* require pars plana vitreous surgery . . . but needs to be evaluated in the near future." (*See* Docket No. 19 (emphasis added).)

excessive risk to his health. *Hemmings*, 134 F.3d at 108 (*quoting Farmer*, 511 U.S. at 837). As shown below, Plaintiff fails to make any allegations of subjective culpability as to Defendants Middleton, Sullivan, Hunt, Erzouki, Francis, Beaudin, Celestin, and Schiavone, requiring dismissal of the claims against each of them. However, Plaintiff has successfully alleged deliberate indifference on the part of Defendants Borecky and Zenk.

### i. *Middleton*

"In order to be held liable under § 1983 and in a *Bivens* action, each defendant must have been personally involved in the alleged constitutional violation." *Vazquez v. Parks*, 2003 WL 1442087, *8 (S.D.N.Y. Feb. 4, 2003). Because Plaintiff's Complaint contains no allegations regarding Defendant Middleton, the action as against Middleton is hereby dismissed. *Thomas v. Ashcroft*, 2004 WL 1444735, at *10 (S.D.N.Y. June 25, 2004) ("It is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violation the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (citations omitted).

### ii. *Defendants Sullivan and Hunt*

Defendant Sullivan is alleged to have laughed upon learning that Plaintiff's file was misplaced. Defendant Hunt allegedly told Plaintiff, "I don't even remember my sister, how could you expect me to remember who you are?" (Complaint ¶¶ 33, 41.) Though these statements, if true, are certainly insensitive to Plaintiff's medical condition, they do not embody the wantonness required to establish the requisite state of mind of either Defendant. *Farmer*, 511

15

U.S. at 834 ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment.") (citation omitted).

### iii. *Defendant Erzouki*

The sole allegation in the Complaint against Defendant Erzouki is that he told Plaintiff on "numerous occasions" that "all [he had was] a head cold and gave [Plaintiff] repeated advice to buy aspirin and cold pills from the inmate commissary system." (Complaint ¶ 34.) This, too, is insufficient to state a claim of deliberate indifference. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also McCloud v. R.P.A. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("[T]here is no right to the prescribed treatment of one's choice if the prescribed treatment is based on applicable medical standards."). Therefore, the claim against Erzouki is dismissed.

### iv. *Defendant Francis*

Plaintiff alleges that Defendant Francis, his primary care physician at MDC, told him: "Don't go crazy with yourself writing all these letters to the court. We will just call the Judge and tell him that the problems are being addressed and that all is being taken care of." (Complaint ¶¶ 28-29.) A statement informing Plaintiff that Defendants are aware of his requests for treatment and are in the process of handling those requests does not imply or establish subjective culpability. *See Demata v. Greifinger*, 1999 WL 47241, at*3 (S.D.N.Y. 1999)

("Treating plaintiff's various injuries with non-surgical techniques before resorting to surgery is certainly a reasonable approach.").

### v. *Defendants Beaudin and Celestin*

Plaintiff alleges that he went to see Defendants Celestin and Beaudin, who had no knowledge that Plaintiff had been taken to the hospital, were not in possession of Plaintiff's file, and could not treat him without same. (Complaint ¶ 19.) This is Plaintiff's only reference to Defendant Beaudin and it fails to allege any indifference to Plaintiff's plight. As such, the claim against Beaudin must be dismissed.

With regard to Defendant Celestin, Plaintiff further alleges that Celestin admitted that he did not know what was wrong with Plaintiff nor what to do with Plaintiff. (Complaint ¶ 35.) Combined, the two allegations against Celestin fail to establish subjective culpability, mandating dismissal of the claim against him, as well. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

### vi. *Defendant Schiavone*

Defendant Schiavone allegedly instructed Plaintiff to be patient; told Plaintiff the "situation was out of his hands"; informed Plaintiff that the medical department was understaffed and that MDC "could take as long as they want." (Complaint ¶ 21.) This statement similarly fails to allege that Schiavone was aware of and ignored a substantial risk of serious harm to Plaintiff or could have done anything to assist Plaintiff.

### vii. *Defendant Borecky*

Plaintiff alleges that Borecky constantly assured him that everything was on track for his surgery, gave him a series of "trial and error" drugs, and prescribed ampicillin to Plaintiff causing Plaintiff to suffer an allergic reaction.

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The Eighth Amendment standard is a higher one, and "[a]n act of medical malpractice will amount to deliberate indifference only if the malpractice involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Nelson v. Rodas*, 2002 WL 31075804, at *12 (S.D.N.Y. Sept. 17, 2002) (citations omitted). Without knowing the circumstances under which Defendant prescribed a penicillin-containing drug to Plaintiff, the Court cannot rule as a matter of law that Borecky lacked subjective culpability.

Given the "liberal pleading standards permitted in *pro se* complaints," *Moorish Sci. Temple of Amer., Inc. v. Smith*, 693 F.2d 987, 989 (2d Cir. 1982), it is not "beyond doubt that the plaintiff can prove no set of facts" establishing Borecky's subjective culpability. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Therefore, Defendants' motion to dismiss the action as against Borecky is denied. *Chance*, 143 F.3d at 704 ("even if we think it highly unlikely that [plaintiff] will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim.").

### viii. *Zenk*

Similarly, the allegations against Defendant Zenk are sufficient to withstand Defendants'

motion to dismiss. Specifically, Zenk's statement to Plaintiff that he "had all the same problems

when [he] was a child and [he] outgrew them," coupled with Zenk's alleged unfulfilled promises

to follow-up with Plaintiff, do evince a subjective indifference to Plaintiff's predicament

sufficient to withstand the instant motion. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996)

("From the allegations of this *pro se* complaint, it is not beyond dispute that [plaintiff] will be

unable to develop evidence to show that [prison officials] were aware of this serious medical

need," making dismissal inappropriate).[3]

### 2.    *Qualified Immunity*

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of

litigation' . . . . The privilege is an *immunity from suit* rather than a mere defense to liability."

*Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (citation omitted).  For that reason, the Supreme

Court has "repeatedly stressed the importance of resolving immunity questions at the earliest

possible stage in the litigation." *Id.* (citation omitted).

On the other hand, "[d]ismissal on the basis of a qualified immunity defense is not

appropriate where there are facts in dispute that are material to a determination of

reasonableness," *Patel*, 411 F. Supp. 2d at 407 (*quoting Thomas v. Roach*, 165 F.3d 137, 143 (2d

Cir. 1999)), or "where the claimaint's description of the events suggests that defendants' conduct

---

[3]These allegations also establish personal involvement beyond Zenk's mere supervisory role at MDC, rendering unconvincing Defendants' argument that Plaintiff referenced Zenk only insofar as the latter's name appears on BOP correspondence.

was unreasonable." *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994). Therefore, qualified immunity can be properly brought on a Rule 12(b)(6) motion to dismiss "if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see also Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) ("[T]he complaint itself establishes the circumstances required as a predicate to a finding of qualified immunity and, consequently, there is no reason to require an answer, a hearing or a trial.") (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

In this instance, qualified immunity could be established upon a showing that it was "objectively reasonable for [Zenk or Borecky] to believe that [their] actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (citation omitted). Plaintiff's Complaint does not set forth facts indicating that either Zenk or Borecky's conduct was objectively reasonable. Additionally, the Court's earlier holding that Plaintiff sufficiently alleged that Zenk and Borecky were subjectively culpable in denying him the proper medical treatment stands in direct opposition to a finding that they believed their actions were lawful.

As the Court must allow plaintiff "an opportunity for discovery as to the questions bearing on defendants' claim of immunity," Defendants' motion to dismiss on qualified immunity grounds is denied. *Castro*, 34 F.3d at 112; *see also Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793-4 (2d Cir. 2002) (Where "[t]he objective reasonableness of [the defendant's] acts depends in part on what information they had at the time," dismissal on qualified immunity grounds is inappropriate).

III.   *Conclusion*

Defendants' motion to dismiss is denied in part and granted in part. Given Plaintiff's *pro se* status at the time he filed the Complaint, as well as his allegations that Defendants impeded his ability to properly exhaust his administrative remedies prior to filing suit, the Court cannot, at this stage, rule, as a matter of law, that he failed to exhaust those procedures. However, the allegations of the Complaint do fail to withstand Defendants' motion to dismiss as to Defendant MDC and the individual defendants in their official capacities, as they are all immune from suit absent consent. Additionally, the claims against Defendants Middleton, Sullivan, Hunt, Erzouki, Francis, Beaudin, Celestin, and Schiavone are dismissed. "The Constitution does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349, and Plaintiff has not alleged that the actions of any of these defendants went so far as to violate the Eighth Amendment. Though Plaintiff is certainly entitled to adequate medical treatment while incarcerated, he is not entitled to the treatment of his choice.

Because Plaintiff does allege that Defendants Zenk and Borecky exhibited a deliberate indifference to his medical conditions, and because qualified immunity cannot yet be resolved, Defendants' motion to dismiss is denied with respect to Zenk and Borecky. Defendants' alternative motion for summary judgment is denied without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
       May 24, 2006

                                            United States District Judge

21