UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

VINCENT DEMARTINO,

                         Plaintiff,                         **REPORT AND RECOMMENDATION**
                                                            **04 CV 3880 (SLT) (LB)**
             -against-

MICHAEL ZENK AND DR. BORECKY,

                         Defendants.

-------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

Plaintiff, Vincent DeMartino, brings this *pro se* action under Bivens v. Six Unknown

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that defendants,[1]

Michael Zenk and Dr. Michael Borecky, violated his rights under the Eighth Amendment to the

United States Constitution. Defendants move to dismiss, and in the alternative, for summary

judgment.[2] The Honorable Sandra L. Townes referred this motion to me for a Report and

Recommendation in accordance with 28 U.S.C § 626(b). It is respectfully recommended that

defendants' motion should be granted and the case should be dismissed.

---

[1]  Plaintiff named eleven defendants: Michael Zenk, the Warden of MDC; Doctors Michael Borecky, Francis and Beaudin; Physician Assistants Erzouki and Celestin; Senior Staff Nurse Hunt; Schiavone, plaintiff's Unit Manager; Stephanie Middleton, a Health Services Administrator at MDC; Barbara Sullivan, an Assistant Health Services Administrator at MDC; and MDC Medical Department. The Court previously dismissed plaintiff's claims against all defendants except for Zenk and Borecky. Document 39.

[2]  Defendants gave plaintiff the requisite Local Civil Rule 56.2 notice. Document 98.

# BACKGROUND

The following facts are not in dispute unless otherwise stated.

## I.    Factual Background

From February 28, 2003 until March 23, 2005, plaintiff Vincent DeMartino was an inmate at the Metropolitan Detention Center in Brooklyn, New York ("MDC"). Defs.' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' Rule 56.1")[3] ¶ 1. At that time, Michael Zenk was the warden and Dr. Michael Borecky was a medical officer at MDC. Id. ¶¶ 4-5. Plaintiff alleges that when he was admitted to MDC, he informed the physician's assistant on duty that prior to his incarceration, he was told by Dr. Jeffrey Shakin, his ophthalmologist, that if he did not have surgery to remove a macular pucker from his right eye, he would suffer irreversible structural damage. Compl. ¶ 7. Plaintiff also informed the physician's assistant that another outside doctor had ordered plaintiff to undergo a right knee replacement. Id. ¶ 9. The MDC medical intake report reflects that prior to his incarceration, plaintiff underwent an operation to repair a detached retina and arthroscopic knee surgery. Defs.' Rule 56.1 ¶ 49.

Plaintiff states that he was given a clean bill of health and placed into MDC's general population. Compl. ¶ 10. While at MDC, plaintiff underwent treatment for a variety of

---

[3]  Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendants filed a 56.1(a) statement; however, plaintiff did not file a 56.1(b) counter-statement. The Court does not solely rely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are supported by admissible evidence and not controverted by the record.

respiratory and digestive ailments. Plaintiff was examined on numerous occasions by MDC medical staff, including Dr. Borecky, and was also treated by an outside pulmonologist, gastroenterologist, and ear nose and throat ("ENT") specialist. Plaintiff was prescribed many medications and also underwent surgery to remove nasal polyps. Defs.' Rule 56.1 ¶ 160.

In May of 2003, plaintiff submitted sick call slips complaining of problems with his eyesight, and on June 11, 2003, he was seen by optometry. Defs.' Ex. A at 250-251; Defs.' Rule 56.1 ¶ 192. On February 20, 2004, Dr. Chang, an ophthalmologist, examined plaintiff's eyes and noted that prior to plaintiff's incarceration he had surgery for retinal detachment in his right eye and that his post-operative status was normal. Defs.' Rule 56.1 ¶¶ 196-197. Dr. Chang reported that plaintiff's vision was "fair with glasses" and recommended a follow-up consultation in one year; Dr. Chang did not recommend eye surgery. Id. ¶ 198. Plaintiff saw optometry again on May 12, 2004, and in June 2004, MDC Brooklyn Health Services ordered prescription eyeglasses for plaintiff. Id. ¶¶ 194, 200. On January 14, 2005, plaintiff saw Dr. Chang for a follow-up examination. Id. ¶ 202.

While at MDC, plaintiff filed several grievances concerning his respiratory, digestive and eye conditions; however, plaintiff did not file any complaints regarding his right knee. See Id. ¶¶ 44, 205. MDC's grievance process, governed by 28 C.F.R. § 542.10 et seq., requires an inmate to exhaust his administrative remedies before filing suit in court. An inmate must first present his concern informally to a staff member, and that staff member must attempt to resolve the concern. Id. ¶ 9. If the inmate's grievance cannot be resolved informally, the inmate is required to submit a BP-9 Administrative Remedy Request ("BP-9") to the warden. Id. ¶ 11. If the inmate is dissatisfied with the warden's response, the inmate must appeal by filing a BP-10 to the Regional

Director. Id. ¶ 13. Finally, if the inmate is dissatisfied with the Regional Director's response, the inmate must appeal by filing a BP-11 to the Bureau of Prisons ("BOP") Central Office. Id. ¶ 15. Only after fully exhausting these steps may an inmate file an action in federal court. Id. ¶ 17.

On October 1, 2003, plaintiff filed a BP-9 (No. 318539-F1), stating that he has a "chronic breathing disorder" and that "medical staff here at M.D.C. has [sic] not followed up with an appointment with a specialist as promised and previously prescribed." Defs.' Ex. C at 33. This grievance was rejected for three reasons: plaintiff failed to submit the request through his counselor or other authorized person; plaintiff failed to provide a copy of necessary attachments; and the grievance was untimely. Defs.' Rule 56.1 ¶¶ 27-28. However, due to the seriousness of plaintiff's grievance, a copy was forwarded to Health Services. Id. ¶ 29.

Plaintiff filed a BP-10 (No. 317514-R1) with the BOP Northeast Regional Office on November 17, 2003, complaining of a "chronic breathing disorder that has affected . . . [his] speech" and an "eye condition," and stating that "the Facility has failed to address the very serious and irreversible eye condition that I suffer from as promised over the last 9 months of my incarceration." Id. ¶ 21; Defs.' Ex. C at 35. The Administrative Remedy Coordinator rejected plaintiff's request, stating that plaintiff "must first file a BP-9 request through the institution . . . before filing an appeal." Defs.' Rule 56.1 ¶ 24; Defs.' Ex. C at 41.

On December 3, 2003, plaintiff filed a second BP-9 (No. 319582-F1) stating that he has a "chronic breathing disorder" and that "medical staff . . . has not followed up with an appointment with a specialist as promised and previously prescribed." Defs.' Ex. C at 34. Warden Zenk responded on February 26, 2008, stating,

> [a]n investigation of your medical history at MDC Brooklyn revealed on September 5, 2003, you were examined by a staff physician, who prescribed an Albuterol

4

inhaler, Normal Saline nasal spray, and Humibid. A complete blood count, urinalysis and chemistry were also ordered. On September 19, 2003, you were examined by a staff physician who diagnosed you with Bronchitis and post-nasal drip. He prescribed Atrovent, Albuterol, and Nasorel to treat your condition. You were also referred you [sic] to a pulmonologist. On September 27, 2003, you were sent to the Downtown Hospital Emergency Room where you were diagnosed with Acid Reflux and Esophagitis. You were seen by a pulmonologist on October 2, 2003, who diagnosed you with acute Bacterial Bronchitis. He prescribed additional antibiotics and antihistamines. On October 24, 2003, you were examined by a staff physician who prescribed Prednisone, Humibid, and Actifed. On December 3, 2003, you were seen by a staff physician for Bronchitis and chronic obstructive pulmonary disease (COPD), per chest x-ray. On December 17, 2003, you were seen by an ENT specialist who diagnosed you with nasal polyps and recommended that a CAT scan of the sinus and a scope of your esophagus be done. The scope was performed on January 23, 2004. The CAT scan has been ordered. Given that you have been examined by an ENT Specialist and you are scheduled for a CAT Scan. [sic] The relief you seek has been granted.

Id. at 38. Plaintiff appealed by filing a BP-10 (319582-R1) with the Regional Director. Defs.'

Rule 56.1 ¶ 34. The Regional Director denied plaintiff's appeal on April 20, 2004, stating, "[a]

review of your appeal reveals that the Warden correctly summarized the medical care you are

receiving at MDC Brooklyn. You have been evaluated and treated repeatedly by medical staff."

Defs.' Ex. C at 39.

On August 1, 2004, plaintiff filed a BP-11 (No. 319582-A1) with the Central Office

stating that the macular pucker has not been removed from plaintiff's right eye, that blindness is

increasing, and that plaintiff continues to be ignored by MDC medical staff. Id. at 37. The

Central Office rejected plaintiff's appeal on August 11, 2004, for failure to include a copy of his

BP-9 and BP-10 responses. Defs.' Rule 56.1 ¶ 37. Plaintiff resubmitted his BP-11 (No. 319582-

A2) on September 7, 2004; however, it was rejected for failure to provide a complete set of his

BP-11 appeal form. Id. ¶¶ 39-40. On October 12, 2004, the Central Office received plaintiff's

third submission of his BP-11 (No. 319482-A3), and rejected it for failure to submit a complete

set of the BP-11 form. Id. ¶ 42. Plaintiff was then advised that he had three opportunities to provide a complete four-part Central Office Appeal form and that he failed to do so. Id. ¶ 43.

## II.    Procedural Background

Plaintiff initiated this action on September 9, 2004, alleging that defendants failed to provide him with adequate medical care in violation of the Eighth Amendment. The complaint states that "Warden Michael Zenk has shown on several occasions a deliberate indifference to my medical needs and in an effort to shut me out assures me that he is looking into the problems and will get back to me. For over 18 months now he has yet to get back to me." Compl. ¶ 27 (internal quotations omitted). With regard to Dr. Borecky, plaintiff writes,

> Dr. Borecky has seen me on several occasions. He is constantly assuring me that all is on track for the numerous surgeries I require and does nothing more than overprescribe numerous trial [and] error medications which I have informed the staff at the M.D.C. medical department is not working to adress [sic] my medical needs. Dr. Borecky is clearly showing a deliberate indifference toward my medical needs and on at least one occasion has commit[t]ed acts of malpractice and negligence by prescribing ampicillin which contains a drug that I am allergic to and had a reaction from.

Id. ¶¶ 31-32.

Plaintiff concludes that defendants' repeated acts of negligence demonstrate an obvious and consistent "pattern of reckless and negligent conduct [which] has left plaintiff in severe discomfort, pain and has caused unnecessary suffering," and that the "[f]ailure to act on medical recommendations and the misplacing or losing of my medical files several times as well as delaying the scheduling of needed surgeries all adds up to a deliberate indifference toward my medical needs." Id. ¶ 45. Plaintiff requests that the Court compel defendants to provide him the surgery he seeks as well as compensatory and punitive damages. Id. ¶¶ 47-49.

On October 15, 2004, plaintiff moved for a preliminary injunction seeking eye, knee and

nasal polyp surgery and alternative treatment for his erosive esophogitis. See Document 7. The

Court held a hearing on December 3 and 10, 2004, and denied plaintiff's motion. See Documents

18 and 124, Transcript of Civil Cause for Conference Before the Honorable Sandra L. Townes,

December 3, 2004 ("December 3, 2004 Transcript") and December 10, 2004 ("December 10,

2004 Transcript").

On February 22, 2005, defendants moved to dismiss, or in the alternative, for summary

judgment. The Court granted defendants' motion in part and denied it in part; the action was

dismissed against all defendants except for Zenk and Borecky.[4] Thereafter, the parties conducted

discovery. Defendants now move to dismiss, and in the alternative, for summary judgment.

Plaintiff opposes the motion.

## STANDARD OF REVIEW

### I.       Motion for Summary Judgment

Defendants' motion attaches many exhibits and affidavits. Therefore, although noticed

as a motion to dismiss, and in the alternative, for summary judgment, it will be treated as a

motion for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment "should be

rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the

outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could

---

[4] Defendants did not serve their answer within ten days of notice of the court's decision pursuant to Fed. R. Civ. P. 12(a)(4)(A). By Order dated November 13, 2008, the Court granted defendants' request to file their answer *nunc pro tunc*. See Document 122, defendants' answer.

return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot , 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendants' motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Finally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## DISCUSSION

### I.    Exhaustion of Administrative Remedies

Defendants argue that plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court observed that PLRA's exhaustion requirement affords corrections officials the opportunity to address complaints internally, take administrative action when necessary, filter out potentially frivolous claims, and establish an administrative record "that clarifies the contours of the controversy." Id. at 524-25.

PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 524, 532 (federal prisoners suing under Bivens, must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit). Additionally, an inmate must properly exhaust administrative remedies. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."

Id. at 90-91. Failure to comply with and exhaust administrative remedies prior to commencing a civil rights action requires the dismissal of such an action without prejudice. Cf., Davis v. Reilly, 324 F.Supp.2d 361, 366 (E.D.N.Y. 2004) ("dismissal of a section 1983 complaint with prejudice is proper where the prisoner failed to exhaust administrative remedies available after a period of several months and those remedies are no longer available.").

In this case, defendants argue that plaintiff failed to comply with MDC's administrative grievance procedures regarding his October 1, 2003 BP-9, November 17, 2003 BP-10, and all three of his BP-11s. See Defs.' Rule 56.1 ¶¶ 24-42. However, before dismissing plaintiff's claim for failure to exhaust, the Court must ask "whether administrative remedies were in fact 'available' to the prisoner," "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense," or whether any other "special circumstances" exist to justify plaintiff's failure to comply with the grievance procedure. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

There is no dispute that administrative remedies were available to plaintiff. See Id. at 688 (administrative remedies are available when, from an objective point of view, "a similarly situated individual of ordinary fitness" would have deemed them available). Here, plaintiff claims that he "submitted all grievances according to institution policy." Compl. at 2. Plaintiff also states, "I began to file administrative remedies with regards to my problems. I went as far as a I could with administrative remedies." Document 103 at 12.

However, it is unclear whether plaintiff was prevented from exhausting his administrative

10

remedies. Under <u>Hemphill</u> and its progeny, defendants may be estopped from raising failure to exhaust as an affirmative defense when the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite grievance procedures. <u>See</u> <u>Ziemba v. Wezner</u>, 366 F.3d 161, 162 (2d Cir. 2004) (plaintiff alleged that prison officials prevented him from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility).

Here, plaintiff claims that he could not properly file his grievances because he was denied access to a copy machine. <u>See</u> Document 33. The record reveals that on August 29, 2004, plaintiff wrote to the BOP Central Office stating,

> [i]n my attempts [and] efforts to resubmit this information in a timely manner, I have been met with the incumbersome [sic] cancelling of law library 2 weeks in a row now . . . Our law librar[y] has been cancelled thus inhibiting my ability to make copies as the only means of copier access here is in the law library.

<u>Id.</u> at 20. Plaintiff's case manager confirmed that the copy machines at MDC were broken. "Yes, our copy machine doesn't work and neither does the copy machine in the law library. We've been using our fax machine to make copies, which now that's making copies black or something like that, so it's not even coming to them clearly." December 3, 2004 Transcript at 22.

Plaintiff also claims that prison officials misplaced or lost his grievances, resulting in "no real solution." Compl. at 2. He states that he sought assistance from MDC staff, but that prison officials and Regional Officers were interfering with the grievance process by falsely stating that he was not sending the requested amount of copies. Document 103 at 12. During plaintiff's deposition, defendants' counsel asked plaintiff about these allegations.

**Q:** When you say a lot of papers are being lost, do you mean your BP9 was lost?

11

**A:** Well, the 9s, the 10s, the 11s. I had to get counsel's help. He even turned around and said he put papers in an envelope himself because there wasn't enough for copies of the whole thing.

Defs.' Ex. D2 at 89.

**Q:** . . . Now, let's look at P45

**A:** This is another [rejection notice] from the central office stating that I didn't send them four carbon sheets, because – which is absurd, because the form itself comes with four sheets, but –

**Q:** And what's the date of this document?

**A:** This is September 23, 2004. It's saying "Request assistant [sic] from the unit team," which I did, and they mailed them out, which I told you.

Id. at 112-113.

The Court finds based on the record that defendants fail to meet their burden to establish the affirmative defense of failure to exhaust. There is a genuine issue of material fact as to whether plaintiff had access to a copy machine in order to fulfill the requisite grievance procedure. Defendants' failure to provide a working copy machine may have inhibited plaintiff's ability to exhaust his administrative remedies. Therefore, defendants' motion to dismiss plaintiff's complaint for failure to exhaust his administrative remedies should be denied.

## II.    Eighth Amendment Violation

Plaintiff alleges that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.[5] The Eighth Amendment prohibits the infliction of "cruel

---

[5] The Court construes plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 as one arising under Bivens v. Six Unknown Named Federal Agens of Federal Bureau of Narcotics, 403 U.S. 388 (1971) due to plaintiff's status as a federal inmate. See Tavarez v. Reno,54 F.3d 109, 110 (2d Cir.1995) (federal courts incorporate § 1983 law into Bivens actions); see also Nunez v. Hasty, No. 04-CV-1282, 2006 WL 2589254, at *7 (E.D.N.Y. Sept. 8, 2006) (Bivens claims are treated as analogous to claims under 42 U.S.C. § 1983 and incorporate the same law). Additionally, here, plaintiff was a pre-trial

and unusual punishment" U.S.C. Const. amend VIII, which includes punishments that involve "the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. In order to establish an Eighth Amendment violation for deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective component. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998) (citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

The objective component requires plaintiff to establish that he was subjected to conditions that are, in objective terms, "sufficiently serious." Hathaway, 37 F.3d at 66 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A medical condition is considered objectively serious if it is a condition of urgency that may result in death, degeneration or extreme pain. Hathaway, 37 F.3d at 66 (citing Nance v. Kelly, 912 F.2d 605 (2d Cir. 1990) (Pratt, J., dissenting)). To meet the requirements of the subjective component, plaintiff must show that defendants knew of and disregarded an excessive risk to his health, were aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw that inference. Chance, 143 F.3d at 702 (citing Farmer v. Brennan, 511 U.S. 825, 837

_____

detainee from February 28, 2003 until May 6, 2004. See USA v. DeMartino, 1:03-mj-00330, Document 163 (plaintiff was convicted by a jury on May 6, 2004). Therefore, plaintiff's claims arising during this period are considered under the Fifth Amendment, but analyzed under the Eighth Amendment's deliberate indifference test. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (applying the Eighth Amendment deliberate indifference test to pre-trial detainee's Bivens claim brought pursuant to the Fifth Amendment).

(1994)).

Here, plaintiff clearly received medical care; however, plaintiff claims that the treatment he received evidences defendants' deliberate indifference to his medical needs. Plaintiff acknowledges that he was treated at MDC for problems with his eyes, nasal polyps, and acid reflux condition but argues that defendants provided him with constitutionally inadequate treatment. For example, plaintiff states that Dr. Borecky prescribed him drugs on a trial and error basis, and that defendants failed to act on his outside doctor's medical recommendations, including providing him with eye and knee surgery. Compl. ¶¶ 31, 45. Plaintiff states "I was not given the proper treatment for my eye." Document 103 at 12. However, as the Court stated at the preliminary injunction hearing, "what we have is not a failure to give you medical treatment, but a disagreement among doctors, which is different." December 3, 2004 Transcript at 9. "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

### A.    Objective Prong

Plaintiff's eye, respiratory and digestive ailments are all sufficiently serious to satisfy the objective component for Eighth Amendment protection. The Court's inquiry into the seriousness of a medical condition considers: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance, 143 F.3d at 702.

14

Here, before he was incarcerated, plaintiff received treatment from Dr. Shakin, an ophthalmologist, on several occasions beginning in March of 2002, and underwent surgery to repair a detached retina on March 15 and 29, 2002. Defs.' Ex. A at 261-265; Defs.' Rule 56.1 ¶ 190; see also Document 103 at 8. According to Dr. Shakin, plaintiff had a history of "sudden onset of spots in the right eye for 4 days with flashes, shadow and a loss of vision." Document 103 at 8. Additionally, plaintiff was seen by eye doctors at MDC on several occasions and claims that "[a]s of this date, I am still suffering in my daily activities and they are affected due to the blindness in my eye." Id. at 13. Accordingly, the Court finds that plaintiff's eye condition is sufficiently serious to satisfy the objective component of the Eighth Amendment. See Thomas v. Arevalo, 95 Civ. 4704, 1998 WL 427623, *6 (S.D.N.Y. July 28, 1998) (plaintiff's eye injury and condition was sufficiently serious to satisfy the objective component of the Eighth Amendment).

The Court also finds that plaintiff's respiratory and digestive conditions are sufficiently serious to satisfy the objective component of the Eighth Amendment. While at MDC, plaintiff was diagnosed with a myriad of ailments, including, an upper respiratory infection, sinusitis, gastroesophageal reflux disease ("GERD"), bronchitis, nasal and sinus polyps, a hiatal hernia and reflux esophagitis. Defs.' Rule 56.1 ¶¶ 56, 58, 62, 68, 108, 111. According to defendants,

> [plaintiff] visited Health Services over 50 times. During those visits he was repeatedly and thorough ly examined both by physicians and PAs, as well as optometrists, ophthalmologists, and other outside specialists. Dozens of medications were prescribed, and prescriptions were systematically reviewed and renewed. All necessary laboratory tests - including more expensive ones such as CT-scans - were ordered and conducted. On numerous occasions, plaintiff was escorted off the prison complex and taken to see specialists in a variety of medical disciplines.

Memorandum of Law in Support of Defendants' Motion to Dismiss, and Alternative Motion for

Summary Judgment ("Defs.' Memo") at 17-18 (internal citations omitted); see also Defs. Ex. A.

Plaintiff establishes that his medical conditions significantly affected his daily activities and caused him substantial pain. He states that on approximately three or four occasions, he was taken to the MDC Medical Department on an emergency basis because he could not breath, Compl. ¶ 12, and that the "Erosive Esophogitis causes daily pain, suffering in that I can not hold down [m]uch of the food that I eat and I also have many sleep-less nights as a direct result of acid churning up in my system." Document 7 ¶ 16. Plaintiff provides the affidavit of his cell mate, Brett Klein, which states "I was up many of nights by the plaintiff's side when he was having trouble breathing [and] was awaken numerous times by his gasping for air." Defs.' Ex. C at 25. On one particular night after plaintiff had taken a certain type of medication, "I hit the emergency call button in [our] cell while the plaintiff was vomiting [and] shaking." Id. at 26. Another inmate at MDC, Charles Wyche, attests, "I'm no doctor but [I] have witnessed Mr. DeMartino in allot [sic] of pain in two differant [sic] housing units." Id. at 30. Based on this evidence, plaintiff establishes that his respiratory and digestive conditions are sufficiently serious to satisfy the objective component of the Eighth Amendment.

Finally, the Court assumes, *ad arguendo*, that plaintiff's right knee condition is sufficiently serious to satisfy the objective component of the Eighth Amendment, despite other courts finding knee conditions to be insufficiently serious. See Taylor v. Kurtz, No. 00-cv-700F, 2004 WL 2414847, *3 (W.D.N.Y. Oct. 28, 2004) (knee injuries are not sufficiently serious to support a claim of deliberate indifference). Here, plaintiff states that he is "losing his balance and falling." Document 103 at 13. Additionally, Brett Klein attests that "I witness daily the plaintiff struggle to walk pain-free. ([D]ue to his right knee.)" Defs.' Ex. C at 26. Likewise, MDC inmate

James Fuller attests that plaintiff had "difficulty walking." Id. at 28. Thus, for purposes of this Report and Recommendation, the Court assumes that plaintiff's right knee condition is sufficiently serious to satisfy the objective component of the Eighth Amendment.

**B.     Subjective Prong**

Although plaintiff satisfies the objective component of the Eighth Amendment, he does not proffer evidence from which a reasonable jury could conclude that defendants were deliberately indifferent to his medical needs. The record evidence does not establish that Dr. Borecky or Warden Zenk knew of and disregarded an excessive risk to his health or safety.

With regard to his eye, plaintiff claims that defendants did not provide him with surgery and that as a result, he suffered irreversible eye damage. Plaintiff claims "the medical department was deliberately indifference [sic] when they knew from the outside Physicians the surgery was required." Document 104 at 2. Plaintiff also claims that defendants knew he needed surgery because he informed the physician's assistant when he was admitted to MDC that he was under doctor's orders to have eye surgery. Document 109 at 4. Even though plaintiff informed the facility upon admission of his medical history and his need for surgery, plaintiff fails to demonstrate that any physician had ordered him to have surgery. Defendants maintain that they had no documents in their possession to establish that plaintiff required surgery. Defs.' Rule 56.1 ¶ 203.

Plaintiff proffers a June 12, 2003 letter written by Dr. Shakin addressed "To Whom It May Concern," which states,

> [Plaintiff] needs to be seen by an ophthalmologist at least once a month. He will
> probably require . . . surgery to remove the macular pucker, but needs to be

17

evaluated again in the near future. This patient's eyes needs to be evaluated in the near future to be sure that irreversible structural damage does not occur.

Document 141 at 10. However, there is no evidence that this letter was ever sent to defendants. In fact, this letter only reflects that it was copied to plaintiff at his Howard Beach, New York, address. Id. at 10. More importantly, Dr. Shakin's letter does not establish that plaintiff *required* surgery.[6]

Plaintiff also proffers a May 21, 2007 letter from Dr. Shakin which states that plaintiff "may have benefitted from Vitrectomy surgery for the macular pucker . . . his vision would probably have been better if surgery had been performed." See Document 103 at 8-9. In the letter, Dr. Shakin states that he spoke with "Dr. R. Beaudovin on 12/29 at the Metropolitan Detention Center"; however, Dr. Shakin does not state that he told Dr. Beaudovin that plaintiff required surgery. The letter states only that plaintiff "may have benefitted" from surgery and that his vision "probably" would have been better had the surgery been done. This letter is insufficient to establish that defendants acted with deliberate indifference to plaintiff's serious medical need.

_____

[6] The Court discussed this letter during plaintiff's hearing for a preliminary injunction.

> **The Court:** All right. It does not appear, first of all, that this was sent to prison authorities, it's addressed to whom it may concern with no reference to prison authorities and, second, nowhere here does he say that you have an immediate need for eye surgery.
> **Mr. DeMartino:** Since the reversal, Your Honor, and I'm sure - -
> **The Court:** I know what it says, Mr. DeMartino, it says that your eyes need to be evaluated. It does not say that you need surgery. And, in fact, you have submitted no proof that you need surgery so I'm certainly not going to order the authorities to give you surgery; I mean from this record there is an indication that you are receiving treatment which is as far as we will go at this point.

December 10, 2004 Transcript at 2-3.

18

Plaintiff also asserts that on May 21, 2008, he was seen

> by an outside doctor. plaintiff [believes] his name was Dr. Landmark. This Doctor
> i[s] a 'Specialist in Retinal Detactment's [sic]." This Doctor Comfirmed" [sic] that
> Plaintiff has a "Macular Pucker" and "Scar Tissue" and that Plaintiff "NEED'S" [sic]
> an Operation to Correct his vision in his right eye. He will testify to this. His report's
> are in Plaintiff's Medical file here at Allenwood, FCI. This should be enouf [sic] to
> Stop a Summery [sic] Judgement [sic]."

Document 111. However, even if a doctor has confirmed that plaintiff needs an operation in

2008, this does not demonstrate that defendants were deliberately indifferent to plaintiff's

medical needs while he was incarcerated at MDC in 2003 to 2005.

Plaintiff also argues that Dr. Borecky's interrogatory response provides "compelling

pro[o]f that defendants were deliberately indifferent to his medical needs. Document 109 at 3-4.

> **Interrogatory:** Were you aware that failure to treat a detached retina could result in
> blindness?
> **Response:** Defendant objects to Interrogatory No. 21 on the ground that it is vague.
> Subject to and without waiving his objection, defendant responds as follows: Yes,
> but I was aware of no evidence, signs, symptoms, or conclusions of other doctors that
> plaintiff had a detached retina requiring treatment.

Defs.' Ex. F at 8. Dr. Borecky's response explicitly denies knowing that plaintiff had a detached

retina *requiring* treatment. Therefore, contrary to plaintiff's conclusion, Dr. Borecky's response

does not establish that he  knew of and disregarded an excessive risk to plaintiff's health or

safety.

Plaintiff also claims that "[n]otwithstanding/despite Plaintiff being allergic to Penicillin,

and said fact being enunciated countlessly throughout Plaintiff's medical records . . . Plaintiff

was prescribed numerous medications containing Penicillin or of the Penicillin genus . . .by

Defendant Borecky . . ." Document 141 at 3. Plaintiff states that he was given penicillin on at

19

least two occasions, see Defs.' Ex. D1 at 129-133, and presents his MDC medical intake form which reflects that he is allergic to penicillin. Document 141 at 20. Plaintiff also presents a long lists of all the medications he was prescribed while at MDC. Id. at 24-27.

However, there is no record evidence that Dr. Borecky prescribed plaintiff a drug containing penicillin. Defendants state that "[a]t no time did Dr. Borecky prescribe plaintiff a drug containing penicillin," see Document 143 at 2, and plaintiff admits that "I'm not a hundred percent sure who prescribed [penicillin]." Defs.' Ex. D1 at 152-153. In fact, plaintiff's medical records reflect that Dr. Berg, an outside specialist not affiliated with BOP, may have prescribed a drug containing penicillin for plaintiff. Defs.' Rule 56.1 ¶¶ 160-163. Apparently, when Dr. Borecky was notified that this drug was prescribed for plaintiff, he contacted Dr. Berg to obtain a substitute non-penicillin drug prescription for plaintiff. See Document 143 at 2; Defs.' Ex. A at 140-141.

Regarding Zenk, plaintiff claims that "[a]t every given time that I had a chance to grab [Zenk] . . . I would say to him, Warden Zenk, I still have not had any help here with my eye, it's getting worse; my knee; this and that; and he would just spin me around. He would shut me out." Defs.' Ex. D1 at 138. Plaintiff specifically refers to an incident on March 4, 2004, where he approached Zenk and told him about his medical issues. Id. at 110-116. Plaintiff states, "[I] spoke to Warden Zenk on March 4 04 lunch line. He told me he had same problems and . . . [that he grew out of them] when he was a kid and he don't think they are going to do anything more." Defs.' Ex. C at 38.

These allegations do not establish Zenk's personal involvement in plaintiff's denial of medical care claims. "Absent some personal involvement by [the supervisory official] in the

allegedly unlawful conduct of his subordinates," he cannot be held liable under <u>Bivens</u>. <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987). Here, Zenk does not recall when he became aware of plaintiff's medical needs and states that inmates often approach him while he is making his rounds. Defs.' Ex. E at 2. Additionally, Zenk asserts that he has no personal knowledge to support plaintiff's allegation that his conditions worsened and denies that there was any failure to timely treat plaintiff. <u>Id.</u> at 5.

Even assuming that plaintiff has established Zenk's personal involvement, plaintiff does not establish that Zenk or Borecky "shut him out." Rather, the evidence reflects that plaintiff received continuous medical treatment while at MDC. Although plaintiff claims that Dr. Borecky referred him to an optometrist when he should have been seen by an ophthalmologist, Document 109 at 4, the record reveals that plaintiff was seen by optometry on June 11, 2003, and May 12, 2004, and was treated by Dr. Chang, an ophthalmologist, on February 20, 2004 and January 14, 2005. Defs.' Rule 56.1 ¶¶ 192- 202. Moreover, Dr. Chang's assessment was that plaintiff's post-operative status was normal; Dr. Chang did not report that plaintiff required surgery. <u>Id.</u> ¶¶ 196-197.

Likewise, plaintiff received treatment with regards to his respiratory and digestive ailments. He was seen over fifty times by MDC Health Services, examined by an array of specialists, and prescribed dozens of medications. Defs.' Memo. at 17. Although plaintiff may disagree with his treatment, a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. <u>Chance</u>, 143 F.3d at 703.

Courts have repeatedly held that an omission of this nature does not amount to a

constitutional violation . . . and disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment. Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment. (Citation omitted).

Sonds v. St. Barnabas Hospital Correctional Health Services, 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001); see also Estelle, 429 U.S. at 105 ( "mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment"). Therefore, plaintiff's assertion that Dr. Borecky "does nothing more than overprescribe numerous trial & error medications . . ." and "has committed acts of malpractice and negligence by prescribing ampicillin which contains a drug that I am allergic to and had a reaction from," Compl. ¶¶ 31-32, is insufficient to establish an Eighth Amendment violation.

No evidence is presented that defendants were deliberately indifferent to plaintiff's knee condition. Although plaintiff listed his knee problem on the intake report, there is no evidence that Zenk or Borecky treated plaintiff's knee or knew of and disregarded an excessive risk to his knee. Additionally, according to Medical Officer Francis Francin, "[plaintiff] has neither complained of knee problems nor exhibited signs or symptoms of pathology requiring a knee replacement." Defs.' Ex. A at 232. However, plaintiff asserts that

[f]rom approx[imately] March 23, 2005 to present, Plaintiff was transferred to numerous federal prisons, viz., USP Canaan, USP Lewisburg, El Reno, USP Beaumont FCI Allenwood . . . At the aforementioned prisons, Plaintiff received treatment for his various ailments in part, viz., his acid reflux, and degenerating knee and eye ailments . . . Although Plaintiff has yet to receive corrective eye and knee surgeries since Plaintiff's transfer from M.D.C. Brooklyn, Plaintiff has received far more comprehensive health care for his numerous ailments . . . That Plaintiff has continued to receive treatment for his acid reflux, and his right knee and eye ailments

22

> (to include recommendations for knee and eye surgery) years after Plaintiff was transferred from M.D.C. Brooklyn is demonstrative of the fact that his health ailments were and are ongoing and not remedied via comprehensive treatment at M.D.C. Brooklyn.

Document 141 at 6. Although plaintiff submits medical records showing that he received treatment for his eye and knee at several of the facilities he has been transferred to since his time at MDC, these records do not establish that defendants were deliberately indifferent to plaintiff's medical needs while he was incarcerated at MDC. Plaintiff clearly has a number of chronic medical conditions. That he continues to receive medical treatment for these conditions is good. However, his treatment since his time at MDC, even if he believes it is far "more comprehensive," does not establish that defendants were deliberately indifferent to his medical needs.

That plaintiff disagrees with defendants' treatment is insufficient to state an Eighth Amendment claim. There is no right to medical treatment of one's choice, and defendants satisfy the Eighth Amendment if the prescribed treatment is based on medical standards. Hernandez v. Goord, 02 Civ 1704, 2006 WL 2109432, at *6 (S.D.N.Y. July 28, 2006) (quoting McCloud v. Delaney, 677 F.Supp. 230, 232 (S.D.N.Y. 1988)). Here, the record evidences that plaintiff received continuous medical treatment at MDC. Plaintiff fails to establish that defendants denied, delayed, or interfered with his medical care.

As plaintiff fails to demonstrate that defendants were deliberately indifferent to his medical needs, defendants' motion for summary judgment should be granted.

## CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION[7]

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: March 30, 2009
      Brooklyn, New York

---

[7] The Court shall send plaintiff a copy of all unreported cases cited herein with this Report and Recommendation.

24